(*Circuit Court of Cook County.*)

## People ex rel. Scully and O'Leary

### vs.

## The Superintendent of the Bridewell.

(1878.)

1. CRIMINAL STATUTES—CONSTRUCTION OF.    Criminal statutes must
   be strictly construed in favor of an accused.
2. TRIAL BY JURY—WAIVER OF.—A trial in a felony case by a jury of
   less than twelve jurors even with the express consent of the
   prisoner, would be void.  In trials for misdemeanors the rule is
   otherwise.
3. TRIAL BY JURY—CONSTITUTION OF 1870—CONSTRUCTION OF AS AP-
   PLIED TO NEW OFFENSES.  The provision of the constitution of
   1870 to the effect that the right to trial by jury "as heretofore
   enjoyed" shall remain inviolate, covers every new definition of
   the same class of crime as to which the right of jury trial was
   before enjoyed.

4. VAGRANCY ACT—CONSTITUTIONALITY OF—DENIAL OF TRIAL BY JURY. The vagrancy act of 1877 (section 271) is unconstitutional and void inasmuch as it deprives an accused of the right of trial by jury.

4. STATUTORY CONSTRUCTION—STATUTE DIRECTING MANNER OF PROCEDURE. If an affirmative statute which is introductive of a new law, directs a thing to be done in a certain manner that thing cannot be done in any other manner, even though there be no negative words.

5. SAME—MODE OF PROCEDURE RENDERING LAW UNCONSTITUTIONAL—ADOPTION OF NEW MODE. If in a statutory proceeding the legislature has prescribed a mode of making it effectual, which is unconstitutional the courts have no authority to reject that mode and adopt a different one.

6. VAGRANCY ACT—PUNISHMENT UNDER—EFFECT OF UNCONSTITUTIONAL AMENDMENT. Section 271 of the vagrancy act of 1877 being unconstitutional, the original section remains in force. The only punishment that can be imposed therefore is a fine of $20.

Petition for habeas corpus. Heard before Judge McAllister. The facts are stated in the opinion.

MCALLISTER, J.:—

The questions for decision here arise upon return to habeas corpus. Relators, without trial by jury or waiver thereof, were convicted before Geo. W. Mitchell, Esq., police justice of the town of Lake, for alleged vagrancy, under secs. 270 and 271 of the criminal code as amended by the act of 1877, and sentenced, one to sixty days and the other to ninety days' imprisonment in the city bridewell. In *Ex parte Brown*,[1] while holding the criminal court in December last, I passed upon the same question involved here, and held sec. 271, as amended, to be unconstitutional. But the correctness of that decision having been challenged by brother judges in other circuits,[2] and a justice of the peace in this county having disregarded it, and the question being before me in these cases, I have re-examined it with greater care and deliberation.

Sec. 270 as it stood in the code of 1874 defined the offense of vagrancy, and prescribed a punishment which was not ex-

---

[1] Reported in this volume.—Ed.

[2] See the opinion in *People v. Hitchcock* reported herein.—Ed.

ceeding six months' imprisonment. Then follows sec. 271, which provides that when a person is convicted before a justice or police magistrate of any offense mentioned in the preceding section, instead of being punished as therein mentioned, he may be fined not exceeding $20. Then came the amendatory act of 1877. The first section declares that secs. 270 and 271 of "an act to revise the law in relation to criminal jurisprudence, approved March 27, 1874, be and the same hereby are so amended as to read as follows:" Then follow two sections, 270 and 271. The former defines the offense by extending the definitions, but leaves off the punishment prescribed in the original 270. Sec. 271, as amended, prescribes the mode of procedure and the punishment, which may extend to six months' imprisonment or hard labor on the highway. No question has ever been made as to the validity of sec. 270 as amended; but, being valid, it takes away the punishment prescribed in the original 270. It is section 271 alone whose validity is questioned. So that, if that section, as it purports to amend original 271, shall be found unconstitutional and void, then it is as nothing; the punishment mentioned in it cannot be inflicted; the original 271 will stand unaffected by the supposed amendment—the result of which will be, that the only punishment which can legitimately be imposed, on conviction for vagrancy, will be the fine of $20 mentioned in the original 271.

In my view, therefore, the principal question in the inquiry is, whether that section as amended by the act of 1877 is valid, or unconstitutional and void. And in its investigation I propose to act only upon settled principles of law, to be applied according to the best of my ability. The age is ripe with conflicting views about almost everything. But if, in the domain of law, there be not such things as established principles—if there be, in reality, no such thing as right reason—then the sages of the law have woefully deceived at least one of their humbler but devoted disciples; nor does the question turn upon a construction of that section with a general one in the criimnal code. This is a criminal statute only, and the rule is universal that such statutes must be construed

strictly. What were the rights of a person accused of va-
grancy when the act of 1874 was passed? The result of this
inquiry is very material. When the constitution of 1848
was adopted, there was, and for many years before had been,
a statute in force in this state, defining vagrancy, and the
mode of procedure for its punishment. One mode was by in-
dictment, where a jury, unless expressly waived, would be
required. The other was a prosecution upon complaint, and
before two justices of the peace, who were authorized to pun-
ish, the fact of vagrancy having been first found by a jury
"which," the statute said, "shall, in all such cases, be sum-
moned and sworn to inquire the truth thereof, whether the
person be a vagrant or not." See: R. S. 1845, sec. 138,
p. 175. Now, by that statute, it was not only the right of the
accused to have a jury trial, but such trial was absolutely in-
dispensible to a lawful conviction as much as in the case of
robbery, burglary, or any other felony, in which cases it has
been held by some of the most respectable courts in the land
that a trial by any less than twelve jurors, with even the ex-
press consent of the prisoner, would be void, because the tri-
bunal would be one unknown to the law, the mere voluntary
creation of the parties: Cooley Const. Lim. 319, cases in
note. But in misdemeanors it would be competent to so
agree.

The constitution of 1848, such statute being in force, con-
tained the guarantee that "the right of trial by jury shall
remain inviolate;" the interpretation to which, as given by
the supreme court in *Ross v. Irving*, 14 Ill. 171, was that it
preserved the right of jury trial as it was understood to ex-
ist at the time of the adoption of the constitution. The same
statute continued in force down to the adoption of the con-
sitution of 1870, and that contained the same guarantee ex-
pressed in broader language, viz: "The right of trial by
jury, *as heretofore enjoyed,* shall remain inviolate." These
words are considered by the courts as generic, and cover every
new definition of the same class of crime as to which the right
of jury trial was before enjoyed. See cases in *Ex parte
Brown,* 10 Chicago Leg. N., No. 12, p. 96.[1]

[1] Reported in this volume.—Ed.

We are now prepared to consider the precise character of sec. 271 as amended. After providing, with an unintelligible jumble of words, for the arrest of accused, which I could never understand, and that he shall be taken before a justice of the peace, it says: ''And the said justice of the peace or police magistrate shall, within thirty-six hours, proceed to try the person accused of being a vagabond, and if he pleads guilty, or if he be found guilty, the said justice of the peace or police magistrate, may sentence the said vagabond to imprisonment,'' etc. Here no mention is made of a jury; the language is entirely consistent with the justice only passing upon the question of guilt. Still, if this were all, I would say that it might be construed with reference to the other provisions of the criminal code, and a jury might be called. But the other provisions of the section mark out a particular mode of procedure entirely outside of anything in the criminal code, which utterly precludes the practicability of a jury trial, and shows that it was intended there should be none. They are as follows: ''In *all* cases under this act the justice shall make a full record of the case, giving the date of the complaint and of the offense, name of the defendant, if known, and character of the charge, the names of all witnesses examined, *and his findings,* together with all other proceedings.'' What is this the justice is to make? A record of the case; the case as it was; and that record must state ''his findings.'' Not the verdict of a jury, but the finding of the justice in the place of a jury. But it has been said by a brother judge in another circuit that the expression, ''his findings,'' only meant his sentence or judgment, and that might be upon the verdict of a jury.

This argument is entirely refuted by a further provision in the section, which is so explicit as to leave no room for cavil or doubt. After the finding of guilt by the justice, and sentence, of which he is to make a record, then comes a provision for carrying into effect, and that is by a writ called a mittimus, well known to the law, it is true; but here particular requisites are prescribed, differing from any other in the code; ''which said mittimus *must* show the date of the charge, name of the defendant, if known, the offense charged, names

of all witnesses examined, date and place of trial, *the finding of the court,* and *the sentence imposed.''* Now if the "finding of the court," and "the sentence imposed," are one and the same thing, why are they both mentioned in this way by a copulative conjunction? The mittimus must not only state the finding of the court, but the sentence imposed also. One which omitted the finding of the court upon the question of guilt, and only stated the sentence, would be utterly void as not in compliance with the statute, assuming that to be valid. Those words, "the finding of the court," have just as definite and well-understood meaning in this state as the words "verdict of the jury" or "finding of the jury." There is authority for parties, in civil cases, to waive a jury and by agreement try them before the court. In all those cases of trial of issues of fact without a jury, the conclusion of the court upon the evidence given on those issues is called "the finding of the court." That expression is as common in the supreme court reports as that of "the finding of the jury" or "verdict of the jury." For these reasons that section denies the right of trial by jury. The legislature did not intend there should be a jury trial, for there is no mention of it; it is excluded by the language used in the requirements both of the record and mittimus. Surely they did not intend the justice should make up a solemn record of a falsehood—a mittimus that recited a lie. This section is introductive of a new law, and describes a certain manner in which the statute shall be carried into effect; it therefore impliedly prohibits it being done in any other manner. "It is a maxim generally true, that if an affirmative statute which is introductive of a new law directs a thing to be done in a certain manner, that thing shall not, even though there are no negative words, be done in any other manner." Potter's Dwarris on Statutes 72, Sedgwick on Statutory Construction, 31. That rule directly applies here. There can be no substitution of something else in the place of any of those things which the provisions of that section say the record and mittimus must show. Leave out the finding of the court and substitute the verdict of a jury, and the whole proceedings are void, *ab initio,* assuming the statute to

be valid. It is, therefore, the inexorable decree of logic and law that the provisions of that section cannot be carried into effect within their precise requirements without denying the right of trial by jury.

In *Ross v. Irving, supra,* the supreme court said: "In our view, the law must be carried into effect in the manner prescribed by the act itself, or not at all. It is a statutory proceeding, and, if the legislature has prescribed a mode of making it effectual which is unconstitutional, the courts have no authority to reject that mode and adopt a different one.'" This doctrine was approved and applied again in *Union Building Association v. Chicago,* 61 Ill. 439, 446, and is unmistakably applicable to this case.

If that section deprives a defendant of the right of trial by jury, as I feel sure it does, it is clearly unconstitutional and void. It therefore did not amend the original sec. 271 and leaves it as it stood, authorizing a fine of $20. But original 270 having been amended by leaving out the punishment therein prescribed, there is no punishment left but in original 271. Disregarding sec. 271 as amended, prosecutions upon 270 as amended may be had, by giving the accused a jury trial; but the punishment must be as above stated. This is the way the case works out in my mind, and until I am overruled by some other justice of the peace I hope to have no more trouble with these questions, before they are finally adjudicated by the supreme court.

The relators will be discharged.

#### NOTE.

See the former opinion of Judge McAllister and the contra opinion of Judge McCulloch in relation to the same subject, both of which opinions are reported in this volume.—Ed.